**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TERRY WRIGHT,

                Plaintiff,

                                                  Case No. 3:13-cv-834-J-34JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

Terry Wright ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of blood in his urine, rectal bleeding, fatigue, and back and hip pain. See Transcript of Administrative Proceedings (Doc. No. 13; "Tr."), filed September 27, 2013, at 154-61, 166. On or about September 24, 2009, Plaintiff filed an application for SSI, alleging a disability onset date of September 22, 2009. Tr. at 260-66.[2] Plaintiff's application was denied initially, see Tr. at 192-94, and was denied upon reconsideration, see Tr. at 203-04.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida ("Local Rule(s)"), within fourteen (14) days after service of this document. Failure to file timely objections waives a party's right to de novo review. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a).

[2] The application summary for SSI is dated October 13, 2009. Tr. at 260. The parties and the Administrative Law Judge indicate that the application was filed on September 24, 2009. The exact date is of no import here.

An Administrative Law Judge ("ALJ") held a hearing on April 15, 2011, during which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 139-80. At the time of the hearing, Plaintiff was fifty-six (56) years old. Tr. at 149. At the conclusion of the hearing, the ALJ agreed, on Plaintiff's counsel's request, to keep the record open for thirty (30) days so Plaintiff could submit additional evidence. See Tr. at 176-79. At some point, presumably within or immediately following that thirty-day period, Plaintiff's counsel wrote a letter to the ALJ explaining that no further evidence would be submitted to the ALJ and "no further stay [wa]s requested." Tr. at 259.

Thereafter, on June 23, 2011, the ALJ issued a written Decision finding Plaintiff not disabled since September 24, 2009, the date his application was filed. Tr. at 127-34. On May 24, 2013, the Appeals Council did receive additional evidence, see Tr. at 2, 5, but ultimately denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On July 15, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises one issue on appeal: "Whether [the ALJ's] step four decision was logically flawed because the substantial evidence explicitly shows that as a matter of law Plaintiff Wright can[]not perform his past relevant work [("PRW")] as a commercial truck driver because he can[]not pass the mandatory physical required by the Florida Department of Transportation." Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Supplemental Security Income Benefits (Doc. No. 15; "Pl.'s Mem."), filed December 2, 2013, at 1 (emphasis and capitalization omitted). On February

3, 2014, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") responding to the issue raised by Plaintiff.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned recommends that the Commissioner's final decision be affirmed for the reasons stated herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform PRW; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step sequential inquiry, where his inquiry ended based on his step four finding.  See Tr. at 129-34.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September

---

[3]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

24, 2009, the application date." Tr. at 129 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: arthralgia; hematuria and rectal bleeding of unknown etiology." Tr. at 129 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 129 (emphasis and citation omitted).

The ALJ determined that Plaintiff "has the residual functional capacity [("RFC")] to perform medium work as defined in 20 CFR [§] 416.967(c) involving lifting/carrying 50 pounds occasionally and 25 pounds more frequently. In an eight-hour workday, [Plaintiff] is able to sit six hours total, and stand/walk six hours total." Tr. at 129 (emphasis omitted). At step four, the ALJ found that Plaintiff "is capable of performing [PRW] as a box truck driver and a tractor trailer truck driver." Tr. at 133 (emphasis and citation omitted). The ALJ concluded, therefore, that Plaintiff "has not been under a disability . . . since September 24, 2009, the date the application was filed." Tr. at 134 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial

evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises only one issue on appeal: whether the ALJ erred at his step four finding. See generally Pl.'s Mem. at 1-7.  Plaintiff argues that the ALJ erred in finding Plaintiff can return to his PRW, because, according to Plaintiff, he cannot "pass the mandatory [Department of Transportation] physical certification required of commercial drivers." Id. at 6.  Plaintiff states that in 2009, he failed the certification requirement due to having blood in his urine. See id. at 5.  Plaintiff contends that because he "present[ed] evidence that he can't meet the health requirements of a commercial driver[, he] proved that he can no longer perform his [PRW]." Id. at 6.

Defendant responds that "Plaintiff's argument on appeal is without merit." Def.'s Mem. at 6.  According to Defendant, "[i]n performing the step-four analysis, the ALJ's

determination does not depend [u]pon whether Plaintiff's past job is still available to him, but whether he is physically and mentally capable of performing the duties of his prior work." Id. (citation omitted).  Citing to the Program Operations Manual System ("POMS"), Defendant explains that in determining whether a claimant can return to his or her PRW, an "ALJ cannot consider whether [the claimant] currently meets the qualifications for licensure to do his or her [PRW]." Id. at 6-7 (citing POMS DI 25005.001.C, Determination of Capacity for []PRW[]–Basics of Step 4 of the Sequential Evaluation Process, available at http://policy.ssa.gov/poms.nsf/lnx/0425005001 (last visited July 3, 2014)).

The fourth step of the sequential inquiry focuses on whether a claimant can return to his or her PRW.  See 20 C.F.R. § 416.920(a)(4)(iv); see also Phillips, 357 F.3d at 1237. Generally, a claimant will be found "not disabled" if the claimant has the RFC "to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy)[.]" Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (S.S.A. 1982); see Jackson v. Bowen, 801 F.2d 1291, 1293-94 (11th Cir. 1986) (holding that "a claimant must demonstrate an inability to return to the previous type of work he was engaged in" rather than a specific former job).  The Regulations explain as follows:

> [The claimant's] impairment(s) must prevent [the claimant] from doing [his or her PRW].  If [the Social Security Administration] cannot make a determination or decision at the first three steps of the sequential evaluation process, [the Administration] will compare [its RFC] assessment . . . with the physical and mental demands of [the claimant's PRW]. . . . If [the claimant] can still do this kind of work, [the Administration] will find that [the claimant is] not disabled.

See 20 C.F.R. § 416.920(f).

The way that Plaintiff frames his issue in this appeal is narrow: he argues only that the ALJ should have found Plaintiff cannot return to his PRW because Plaintiff cannot obtain the necessary licensure for that work.  See Pl.'s Mem. at 5-6.  Generally, however, a claimant's ability to secure any licensure is not considered at step four.  See generally Plaza v. Astrue, No. EDCV 12-01029-OP, 2013 WL 210247, at *4 n.3 (C.D. Cal. Jan. 18, 2013) (unpublished) (recognizing that "[t]he impairment" and not whether a claimant can obtain a license "must be the primary reason for the claimant's inability to engage in work"); see generally POMS DI 25005.001.C, Determination of Capacity for []PRW[]–Basics of Step 4 of the Sequential Evaluation Process, available at http://policy.ssa.gov/poms.nsf/lnx/0425005001 (last visited July 3, 2014) (directing that "[w]hen evaluating a claimant's ability to do PRW at step 4, do not consider: . . . whether the claimant has maintained licensure or currently meets the qualifications for licensure to do PRW").  Whether a claimant's PRW exists in significant numbers in the national economy or whether a claimant's PRW is still a job existing in the national economy is not even considered.  See 20 C.F.R. § 416.920(b)(3) (noting that if a claimant has the RFC to perform his or her PRW, the Administration "will not consider [the claimant's] vocational factors of age, education, and work experience or whether [the claimant's PRW] exists in significant numbers in the national economy"); see also Barnhart v. Thomas, 540 U.S. 20, 25-30 (2003); Cribbs v. Astrue, No. 1:11-cv-654-AWI-SMS, 2012 WL 4090186, at *20 (E.D. Cal. Sept. 17, 2012) (unpublished findings and recommendation), adopted, Order on Magistrate Judge's Findings and Recommendation (Doc. No. 22) (E.D. Cal. Oct. 16, 2012) (unpublished).

Rather, at step four, the focus is on a claimant's RFC and whether that RFC permits the claimant to return to his or her PRW (or the kind of work the claimant used to perform). See 20 C.F.R. § 416.920(f).  Accordingly, here, the ALJ was not required to consider whether Plaintiff can obtain the necessary licensure to perform his PRW, and the ALJ stated as much in his Decision.  See Tr. at 132 (stating, "While [the ALJ] acknowledges [Plaintiff's] allegation that he stopped working because he did not pass a required physical to maintain his professional licensure, the disability rules and regulations do not recognize licensure as a disability criteria").  The ALJ did not commit error in this regard.

Although Plaintiff's argument goes no further, Defendant addresses whether the underlying reason Plaintiff cannot obtain licensure (blood in his urine) would result in him not being able to perform the physical demands of his PRW.  See Def.'s Mem. at 7-14.  In a somewhat similar vein, some courts have found that ALJs commit error by finding a claimant can return to his or her PRW if that claimant's PRW requires passing a drug test, and the claimant cannot pass a drug test because he or she is taking prescribed medications as a result of his or her impairment(s).  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010); see Scott v. Astrue, No. CV 110-052, 2011 WL 2469832, at *8 (S.D. Ga. May 16, 2011) (unpublished report and recommendation) (recognizing that Berry, 622 F.3d 1228, "provides persuasive authority for the position that the ALJ erred in finding [the p]laintiff capable of performing his [PRW] as a paper truck driver despite the fact that his prescribed treatment disqualified him from holding a CDL"), adopted, 2011 WL 2461931 (June 17, 2011).  Neither party cites to these cases in their Memoranda.

In what appears to be the leading case on this issue, Berry, 622 F.3d 1228, the court stated that "[i]f a drug prescription disqualifies a claimant from performing his [PRW], he is not capable of returning to that work." Id. at 1231.  The court reasoned in part that "the alleged drug-testing requirement appear[ed] on its face directly related to a job applicant's ability safely to meet the physical and mental demands of the job."  Id. at 1233.  The court found that "[i]n th[o]se circumstances, when the alleged requirement is mandatory and closely related to the physical and mental demands of the job as employers understand them, and [the claimant's] inability to meet it is a direct physical result of prescribed medical treatment for an acknowledged impairment, the alleged requirement cannot be disregarded as a mere hiring preference."  Id.  The court also found that the ALJ in that case "erred by precluding [the claimant] from making a record whether his medically required need to take prescription drugs would bar him from working as a courier."  Id. at 1231.

At first blush, it seems counterintuitive to say that a claimant can perform his or her PRW if that claimant cannot obtain the licensure required to obtain that PRW.  Yet, that is not the issue addressed at step four of the sequential inquiry.  Step four focuses on whether a claimant has the ability to perform the physical and mental demands of his or her PRW, not on whether a claimant will actually succeed in obtaining that PRW.  By way of an example, the POMS note that when "a claimant alleges inability to do PRW as the result of a medically based reason that prevents him or her from meeting the licensure requirements for his or her PRW," the ALJ should "carefully assess the impact of the claimant's impairment-related limitations or restrictions, including limitations or restrictions resulting from prescribed treatment, on the claimant's RFC."  POMS DI 25005.001.C,

Determination of Capacity for []PRW[]–Basics of Step 4 of the Sequential Evaluation Process, available at http://policy.ssa.gov/poms.nsf/lnx/0425005001 (last visited July 3, 2014) (emphasis added). Here, the ALJ did so, and he was not required to do any more.

Even accepting the rationale of the above-cited, non-binding authority, there is a thin but distinguishable line between those cases and the instant case that requires a different result here. First, it is abundantly clear why having prescription drugs in one's system would prevent one from driving: the effects of the drugs could easily and seriously affect one's ability to drive. See Berry, 622 F.3d at 1233 (recognizing that "the alleged drug-testing requirement appear[ed] on its face directly related to a job applicant's ability safely to meet the physical and mental demands of the job" (emphasis added)). On the contrary, it is not readily apparent why having blood in one's urine would cause one to fail a physical certification required of commercial drivers.

Second, in the above-cited cases, the plaintiffs were taking a prescribed medication as a result of one or more impairments, and the medication would have presumably affected their ability to perform their PRW (driving). Here, to the contrary, the ALJ found that Plaintiff's hematuria (blood in urine), despite it being a severe impairment at step two, does not preclude Plaintiff from performing the physical and mental requirements of his PRW. The ALJ summarized Plaintiff's testimony and the medical evidence with respect to this impairment. See Tr. at 130-33. The ALJ specifically pointed out that "the record does not document any specific etiologies for [Plaintiff's] list of symptoms," and "the record reflects that [Plaintiff] was capable of working while experiencing these symptoms and he testified that he could still work if the bleeding would stop." Tr. at 132. The ALJ ultimately

found that Plaintiff's testimony on this matter was not entirely credible and that the medical evidence did not support any additional limitations than those accounted for in the RFC. See Tr. at 130-33; see also Tr. at 132 (concluding that "[d]espite claiming a complete inability to work, the record provides no convincing evidence over time, and the [ALJ could not] find the testimony and alleged limitations of [Plaintiff] to be well supported by the evidence of record"). Plaintiff fails to challenge any of these findings, so any issue with respect to these findings is deemed waived.[4]

## V. Conclusion

Simply put, Plaintiff, who carries the burden at step four, has failed to prove that he cannot perform his PRW. Plaintiff's narrow argument focuses solely on a matter that is not appropriately considered at step four. Accordingly, it is

**RECOMMENDED THAT**:

1.  The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

---

[4] The Court's Scheduling Order advises that any grounds upon which the ALJ's decision is being challenged must be identified with particularity and any contention for which the particularity requirement is not met is subject to being disregarded for insufficient development. Scheduling Order (Doc. No. 14) at 1; see United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (deeming an issue abandoned when there were "only four passing references" to it in a party's brief, and reiterating that claims must "be unambiguously demarcated" to "avoid confusion as to the issues that are in play and those that are not") (citation omitted).

    2.    The Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 7, 2014.

 

*[signature]*
**JAMES R. KLINDT**
United States Magistrate Judge

jlk
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record